**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| SIDNEY MICHAELS, | : | |
|     Petitioner | : | |
| | : | No. 1:20-cv-00324 |
|     v. | : | |
| | : | (Judge Kane) |
| LAUREL HARRY, et al., | : | |
|     Respondents | : | |

**MEMORANDUM**

On February 24, 2020, pro se Petitioner Sidney Michaels ("Petitioner"), who is presently confined at the State Correctional Institution in Camp Hill, Pennsylvania ("SCI Camp Hill"), initiated the above-captioned action by filing a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  (Doc. No. 1.)  Following an Order to show cause (Doc. No. 5), Respondents filed a response to Petitioner's § 2254 petition on March 6, 2020 (Doc. No. 6).  After receiving an extension of time (Doc. Nos. 7, 8), Petitioner filed his traverse on April 9, 2020 (Doc. No. 9). Petitioner's § 2254 petition is, therefore, ripe for disposition.

**I.   BACKGROUND**

    **A.   Procedural History**

Petitioner is serving a term of life imprisonment imposed after he was convicted by a jury of second-degree murder, robbery-inflict serious bodily injury, and conspiracy to commit robbery-inflict serious bodily injury.  See Commonwealth v. Michaels, Docket No. CP-22-CR-0002913-2017 (Dauphin Cty. C.C.P.).[1]  The Superior Court of Pennsylvania set forth the background of the case as follows:

---

[1]In a habeas proceeding, federal courts may take judicial notice of state court records.  See Minney v. Winstead, Civ. No. 12-1732, 2013 WL 3279793, at *2 (W.D. Pa. June 27, 2013); see also Reynolds v. Ellingsworth, 843 F.2d 712, 714 n.1 (3d Cir. 1988).  Accordingly, in reviewing Petitioner's § 2254 petition, the Court takes judicial notice of the publicly-available dockets of

We take the following factual background and procedural history from the trial court's May 8, 2019 opinion and our independent review of the certified record.  On April 27, 2017, the Commonwealth arrested and charged Michaels for the April 25, 2017 murder and robbery of the victim, Kodi Flanagan.  At trial, the Commonwealth presented testimony from four witnesses, co-defendant Sadia Bretznepe, Saeed Christiaan Afhsar, Stephen Wetnze, and co-defendant Dylan Beard.

Mr. Flanagan was a drug-dealer who owed Michaels money.  Mr. Beard had set up Mr. Flanagan with a drug supplier so he could sell marijuana, but Mr. Flanagan failed to pay for the drugs that were fronted to him.  Mr. Beard and Michaels decided to confront Mr. Flanagan about these issues approximately one week before he was killed.

In April 2017, Michaels and Mr. Beard contacted Ms. Bretznepe, a long-time friend of Mr. Flanagan's, to get her assistance in arranging a meeting with him under the guise of a drug deal because they knew he would not trust them if they attempted to do so.  Michaels contacted Ms. Bretznepe on Snapchat to see if she knew how to reach Mr. Flanagan.  She indicated she did not, but two days later, Michaels contacted her and offered to pay her for any information she had about how to locate Mr. Flanagan because he owed Michaels and Mr. Beard money.  After Ms. Bretznepe explained she did not know how to contact Mr. Flanagan and was not interested in Michaels' money, Michaels did not make any further effort to contact her.  However, the next day (the day of the murder), Ms. Bretznepe engaged in a video chat with Mr. Beard; during which Michaels was in the background directing Mr. Beard to tell Ms. Bretznepe the specific details of location and time for the drug deal with Mr. Flanagan.

Mr. Afshar was friends with Mr. Beard and met Michaels through him the day before the shooting.  That day, Mr. Beard advised Mr. Afshar that Mr. Flanagan owed him money, and that he and Michaels intended to find him to get it back.

The next day (the day of the incident), Mr. Afshar agreed to serve as their protection in this plan.  He picked up Michaels and Mr. Beard from each of their residences and the men drove around until Mr. Afshar dropped them off near Mr. Beard's home at approximately 4:00 p.m.  During a series of text messages with Mr. Beard shortly thereafter, Mr. Afshar discovered that Michaels planned to bring a gun to the meeting with Mr. Flanagan.  However, Mr. Beard did not think that the gun would be used because the plan was to ambush Mr. Flanagan, attack him and take all of the items in his possession, [and] not [to] shoot him.

Later that evening, Mr. Afshar met Mr. Beard and Michaels near the agreed-upon location.  Mr. Afshar walked around on his own looking for Mr. Flanagan

Petitioner's criminal and collateral post-conviction proceedings in the Court of Common Pleas of Dauphin County, the Pennsylvania Superior Court, and the Pennsylvania Supreme Court.

before he observed Mr. Beard and Michaels approach Mr. Flanagan's vehicle, Mr. Beard pull him out, and Mr. Flanagan attempt to run away. When Mr. Beard punched Mr. Flanagan in the back of the head to keep him from escaping, Mr. Afshar and Mr. Beard witnessed Michaels shoot Mr. Flanagan twice from the driver's side of the vehicle, before then assaulting him and going through his pockets. Mr. Beard also went through Mr. Flanagan's pockets. Mr. Beard then ran away and Michaels left the scene with Mr. Afshar in his vehicle. After dropping Michaels off, Mr. Afshar called 911 to report the shooting. Michaels and Mr. Beard later called Mr. Wentze for a ride and Michaels advised him that Mr. Flanagan had been shot and might be dead.

Video surveillance of a portion of the scene showed a person in light-colored khaki pants like those worn by Michaels approach the driver's side of Mr. Flanagan's vehicle. An individual dressed in all black was near him. Mr. Beard identified the men as Michaels and Mr. Afshar, respectively.

Commonwealth v. Michaels, No. 223 MDA 2019, 2019 WL 6337721, at *1-2 (Pa. Super. Ct. Nov. 26, 2019) (citations omitted). Petitioner subsequently filed post-sentence motions challenging his sentence and the weight and sufficiency of the evidence, which the trial court denied. See id. at *2.

Petitioner timely appealed to the Superior Court of Pennsylvania, raising the following claims for relief: (1) a mandatory sentence of life without parole violated the United States and Pennsylvania' constitutional proscriptions against cruel and unusual punishment; (2) the evidence was insufficient to convict him of second-degree murder; and (3) the verdict was against the weight of the evidence. See id. at *2-4. On November 26, 2019, the Superior Court affirmed Petitioner's judgment of sentence. See id. at *4. Petitioner did not seek allowance of appeal from the Supreme Court of Pennsylvania. Petitioner subsequently filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on February 24, 2020. (Doc. No. 1.)

## B.    Petitioner's Habeas Claims

Petitioner raises the following grounds for relief in the instant habeas petition:

1. The trial court's decision to sentence Petitioner to life without parole violates the Eighth Amendment to the United States Constitution because the sentence is "disproportionate and excessive";

2. The evidence presented at trial was insufficient to prove Petitioner's guilt beyond a reasonable doubt; and

3. The trial court erred in denying Petitioner's motion for a new trial "where the verdict was contrary to the weight of the evidence and [shocks] one['s] sense of justice."

(Id.)

## II.   LEGAL STANDARD

Habeas corpus is an "'extraordinary remedy' reserved for defendants who were 'grievously wronged' by the criminal proceedings." See Dunn v. Colleran, 247 F.3d 450, 468 (3d Cir. 2001) (quoting Calderon v. Coleman, 525 U.S. 414, 146 (1998)).  The exercise of restraint by a federal court in reviewing and granting habeas relief is appropriate due to considerations of comity and federalism.  See Engle v. Isaac, 456 U.S. 107, 128 (1982).  "The States possess primary authority for defining and enforcing the criminal law.  In criminal trials they also hold the initial responsibility for vindicating constitutional rights.  Federal intrusions into state criminal trials frustrate both the States' sovereign power and their good-faith attempts to honor constitutional law."  Id.  States also have a recognized interest in the finality of convictions that have survived direct review within the state court system.  See Brecht v. Abrahamson, 507 U.S. 619, 620 (1993).

A district court may entertain an application for a writ of habeas corpus filed by a person in state custody "only on the ground that he is in custody in violation of the Constitution or laws of the United States."  See 28 U.S.C. § 2254(a).  If a claim presented in a § 2254 petition has been adjudicated on the merits in state court proceedings, habeas relief may not be granted unless:

4

the adjudication of the claim[] (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established [f]ederal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Id. § 2254(d).

## III.   DISCUSSION

### A.   Ground Three: Non-Cognizable on Federal Habeas Review

As his third ground for relief, Petitioner asserts that the trial court erred in denying his motion for a new trial because the verdict was contrary to the weight of the evidence.  (Doc. No. 1 at 8.)  "Weight of the evidence claims are distinct from sufficiency of the evidence [claims]." Whichard v. McGrady, No. 08-1642, 2008 WL 4916279, at *4 (E.D. Pa. Nov. 14, 2008).  The United States Court of Appeals for the Third Circuit has explained that "under Pennsylvania law, a sufficiency challenge and a weight challenge are 'discrete inquiries.'"  See Carnevale v. Sup't Albion SCI, 654 F. App'x 542, 548 n.5 (3d Cir. 2016) (quoting Commonwealth v. Whiteman, 485 A.2d 459, 461 (Pa. Super. Ct. 1984)).  "A motion for new trial on the grounds that the verdict is contrary to the weight of the evidence[] concedes that there is sufficient evidence to sustain the verdict.  Thus, the trial court is under no obligation to view the evidence in the light most favorable to the verdict winner (as it would be in a sufficiency challenge)."  Id. (quoting Commonwealth v. Widmer, 744 A.2d 745, 751 (Pa. 2000)).  Whereas a challenge to the sufficiency of the evidence implicates the Fourteenth Amendment's Due Process Clause, "[a]n assertion that a state conviction is against the weight of the evidence adduced at trial, however, does not implicate the Constitution in the same manner."  See Laboy v. Pa. State Att'y Gen., No. 1:16-cv-1951, 2017 WL 6055339, at *2 (M.D. Pa. Dec. 7, 2017).  Quite simply, "a claim that a verdict is against the weight of the evidence is not cognizable on habeas review because it

requires an assessment of the credibility of the evidence presented at trial, and a state court's

credibility determinations are binding on a federal habeas court."  See Davis v. Lavan, No. 03-

40211, 2004 WL 2166283, at *9 (E.D. Pa. Sept. 23, 2004).  Thus, the Court may not consider the

merits of Petitioner's weight of the evidence claim.  The Court, therefore, will dismiss Ground

Three as non-cognizable on federal habeas review.

**B.      Merits of Petitioner's Remaining Grounds**

**1.      Ground One: Eighth Amendment Violation**

In Ground One, Petitioner asserts that the trial court's decision to sentence him to life

without parole violates the Eighth Amendment to the United States Constitution because his

sentence "is disproportionate and excessive."  (Doc. No. 1 at 5.)  Petitioner maintains that "[h]is

co-defendants['] sentences were disproportionate to his own and the facts found by the jury."

(Id.)

> With respect to Petitioner's claim, the Superior Court wrote:
>
> > Michaels first contends that a mandatory sentence of life without the possibility of parole violates the United States and Pennsylvania Constitutions' proscription against cruel and unusual punishment.  In essence, he maintains that the trial court's lack of discretion in his case resulted in a "disproportionate, excessive" sentence.
> >
> > However, in Commonwealth v. Cornish, 370 A.2d 291 (Pa. 1977), our Supreme Court rejected a nearly identical argument as the one presented here, holding:
> >
> > > Under the present statutory scheme, the mandatory sentence is imposed only in cases of murder of the second degree, or felony murder.  It can hardly be said that the circumstances wherein a murder is committed during the commission of a felony vary to such an extent that the legislative determination to mandate one penalty is unreasonable.
> >
> > Cornish, supra at 293 n.4.

> Based on this precedent, Michaels' claim that his mandatory sentence was illegal because it constituted cruel and unusual punishment and is disproportionate to the facts presented lacks merit.

Michaels, 2019 WL 6337721, at *2-3 (citation omitted).

The Eighth Amendment to the United States Constitution provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishment inflicted." See U.S. CONST. amend. VIII.  The "cruel and unusual punishments" clause prohibits not only barbaric punishments, but also sentences that are disproportionate to the crime committed."  See Solem v. Helm, 463 U.S. 277, 284 (1983); see also Harmelin v. Michgan, 501 U.S. 957, 1001 (1991) ("[T]he Eighth Amendment does not require strict proportionality between crime and sentence.  Rather, it forbids only extreme sentences which are grossly disproportionate to the crime."); Ewing v. California, 538 U.S. 11, 20 (2003) (noting that the "Eighth Amendment, which forbids cruel and unusual punishments, contains a narrow proportionality principle that applies to non-capital sentences").  In Solem, the Supreme Court noted that the following three (3) criteria should guide a court's proportionality analysis: (1) the gravity of the offense and the harshness of the penalty; (2) the sentences imposed on other criminals in the same jurisdiction; and (3) the sentences imposed for commission of the same crime in other jurisdictions.  See Solem, 463 U.S. at 290-92.  The Third Circuit has instructed that, in general, "a sentence within the limits imposed by statute is neither excessive nor cruel and unusual under the Eighth Amendment.  This is so because we accord substantial deference to [the legislature], as it possesses broad authority to determine the types and limits of punishments for crimes."  See United States v. Miknevich, 638 F.3d 178, 186 (3d Cir. 2011).  While the Eighth Amendment does contain a narrow proportionality principle for non-capital cases, "only extraordinary cases

will result in a constitutional violation." See United States v. Walker, 473 F.3d 71, 79 (3d Cir. 2007) (citing Lockyer v. Andrade, 538 U.S. 63, 72, 77 (2003)).

In Commonwealth v. Middleton, 467 A.2d 841 (Pa. Super. Ct. 1983), the Superior Court considered the three (3) Solem factors set forth above and concluded that the imposition of a mandatory sentence of life without parole for second-degree murder did not violate the Eighth Amendment. The Superior Court concluded that "[t]he offense of felony-murder is undoubtedly one of the gravest and most serious which can be committed." See Middleton, 467 A.2d at 847. The Superior Court compared the sentence imposed on those convicted of second-degree murder to those imposed for other crimes within Pennsylvania and noted that first-degree murder is the only other offense for which life imprisonment may be imposed. See id. at 847. Finally, the Superior Court compared the sentence to those imposed for the same crime in other jurisdictions and concluded that "a sentence of life imprisonment for felony-murder comports with the range of sentences found proper in other jurisdictions." See id.

Against this background, the Court does not agree with Petitioner that his sentence of life imprisonment without the possibility of parole for second-degree murder violates the Eighth Amendment. The Supreme Court has held that a life sentence, even for a non-violent property crime, is constitutional. See Harmelin, 501 U.S. at 961, 994-96 (upholding a sentence of life without parole for a defendant convicted of possession more than 650 grams of cocaine, even though it was the defendant's first offense); Rummel v. Estelle, 445 U.S. 263, 265-66 (1980) (upholding a life sentence following the defendant's convictions for fraudulent use of a credit card, passing a forged check, and false pretenses). "Under Harmelin, it is clear that a mandatory life sentence for murder does not constitute cruel and unusual punishment." United States v. LaFleur, 971 F.2d 200, 211 (9th Cir.1991); see also Craig v. Frank, No. 99-504, 2004 WL

875500, at *2-3 (E.D. Pa Mar. 18, 2004) (rejecting the petitioner's argument that a sentence of life imprisonment for second-degree murder in Pennsylvania violates the Eighth Amendment). While Petitioner contends that his sentence violates the Eighth Amendment because it is disproportionate to those imposed on his co-defendants, Petitioner acknowledges that his co-defendants accepted plea agreements and pled guilty to third-degree murder, robbery, and criminal conspiracy. (Doc. No. 9 at 7.) In light of the legal standard set forth above, the Court concludes that the state court's conclusion was a reasonable determination of the facts in light of the evidence presented, and was neither contrary to, nor an unreasonable application of, clearly established federal law. Accordingly, Ground One of Petitioner's § 2254 petition does not warrant habeas relief.

### 2. Ground Two: Sufficiency of the Evidence

In Ground Two, Petitioner maintains that the evidence presented by the Commonwealth was not sufficient to prove his guilt beyond a reasonable doubt. (Doc. No. 1 at 7.) The standard of review used by a federal court when addressing a claim regarding the sufficiency of the evidence is "whether after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." See Jackson v. Virginia, 443 U.S. 307, 319 (1979). The credibility of witnesses, the resolution of conflicts of evidence, and the drawing of reasonable inferences from proven facts all fall within the exclusive province of the factfinder and, therefore, are beyond the scope of federal habeas sufficiency review. See id. Accordingly, "the only question under Jackson is whether that finding was so insupportable as to fall below the threshold of bare rationality." See Coleman v. Johnson, 566 U.S. 650, 656 (2012).

With respect to Petitioner's sufficiency claim, the Superior Court wrote:

Section 2502 of the Crimes Code, provides, in pertinent part: "A criminal homicide constitutes murder of the second degree when it is committed while defendant was engaged as a principal or an accomplice in the perpetration of a felony." 18 Pa. C.S.A. § 2502(b). Pursuant to Section 3701(a)(1)(i), "[a] person is guilty of robbery if, in the course of committing a theft, he (i) inflicts serious bodily injury upon another[.]" 18 Pa. C.S. § 2502(b)(1). Finally, Section 903(a) states that "[a] person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he . . . agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime . . . or agrees to aid such other person or persons in the planning or commission of such crime[.]" 18 Pa. C.S. § 903(a).

Instantly, the Commonwealth provided testimony from Mr. Beard that he and Michaels specifically sought out Ms. Bretznepe in an effort to locate Mr. Flanagan to rob because he owed them money. Ms. Bretznepe similarly testified that both Michaels and Mr. Beard contacted her in an attempt to locate Mr. Flanagan. Michaels was present for the video chat when Ms. Bretznepe spoke with Mr. Beard about robbing Mr. Flanagan. Mr. Afshar testified that there was a plan between Mr. Beard and Michaels to find and rob Mr. Flanagan because he owed them money, and that he was to act as their protection. There was surveillance video that corroborated Mr. Afshar's story that the men went to the Harrisburg Mall earlier in the day of the murder. Mr. Beard and Mr. Afshar were aware that Michaels was bringing a firearm to the meeting with Mr. Flanagan. Finally, Mr. Beard and Mr. Afshar observed Michaels shoot Mr. Flanagan before he went through his pockets and left the scene.

Viewing the foregoing in the light most favorable to the Commonwealth, we conclude that the trial court properly found that it provided sufficient evidence to prove beyond a reasonable doubt that Michaels committed second degree murder, robbery, and conspiracy to commit robbery.

Michaels, 2019 WL 6337721, at *4 (alterations in original).

Petitioner maintains that the evidence does not support the verdict, arguing that the evidence "is unreliable as it nearly all comes from corrupt sources[,] [t]hat being the co-defendants in a crime." (Doc. No. 9 at 11.) He avers further that the "evidence is inconsistent and contradictory." (Id.) For this Court to reach such a conclusion, however, it would need to assess the credibility of the witnesses at Petitioner's trial. As noted above, this Court lacks the authority to do so. See Marshall v. Lonberger, 459 U.S. 422, 434 (1983) (noting that "federal habeas courts [have] no license to redetermine credibility of witnesses whose demeanor has been

observed by the state trial court"); see also Valenzuela v. Pennsylvania, No. 18-1246, 2019 WL 4139285, at *1 (E.D. Pa. Aug. 30, 2019) (noting that "[i]t is for the jury to sort out any inconsistences in the record").

Based upon the above standard, the Court concludes that there was sufficient evidence to support Petitioner's convictions. As noted by the Superior Court, the Commonwealth presented evidence that Petitioner and Mr. Beard intended to rob Mr. Flanagan because he owed them money. See Michaels, 2019 WL 6337721, at *4. Mr. Beard and Mr. Afshar knew that Petitioner was bringing a firearm to the meeting with Mr. Flanagan, and they both testified that they observed Petitioner shoot Mr. Flanagan "before he went through his pockets and left the scene." See id. Thus, the Commonwealth presented sufficient evidence to demonstrate that: Petitioner conspired to rob Mr. Flanagan; Petitioner did so rob Mr. Flanagan while inflicting serious bodily injury; and Petitioner murdered Mr. Flanagan during the commission of that robbery. The Court, therefore, finds that the "state court's conclusion was a reasonable determination of the facts in light of the evidence presented, and was neither contrary to, nor an unreasonable application of, clearly established federal law." See Price v. Garman, No. 1:17-cv-1103, 2018 WL 3546558, at *7 (M.D. Pa. July 24, 2018). Consequently, Ground Two of Petitioner's § 2254 petition does not warrant habeas relief.

## IV.     CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c)(1)(A), unless a circuit justice or judge issues a certificate of appealability ("COA"), an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2254. A COA may issue only if the applicant has made a substantial showing of the denial of a constitutional right. See 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his

constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  Miller-El v. Cockrell, 537 U.S. 322 (2003).  Accordingly, because reasonable jurists could not disagree with the resolution of this petition, there is no basis for the issuance of a COA.  Thus, the Court will decline to issue a COA because Petitioner has failed to demonstrate "a substantial showing of the denial of a constitutional right."  See 28 U.S.C. § 2253(c)(2); see also Slack v. McDaniel, 529 U.S. 473, 484 (2000).

## V.   CONCLUSION

For the foregoing reasons, Petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. No. 1) will be denied and a COA will not issue.  An appropriate Order follows.